### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF NEW MEXICO

Case No. 1:14-MC-00045

|  |  |  |
|---|---|---|
| } | **TTAB Opposition Nos.** | **91204917  (parent)** |
| } | | |
| EL ENCANTO, INC., and } | | 91207335 |
| HATCH CHILE ASSOCIATION } | | 91207365 |
|     Petitioners, } | | |
| } | TTAB Cancellation No. | 92056871 |
| v. } | | |
| } | | |
| HATCH CHILE COMPANY, INC. } | | |
|     Registrant/Applicant } | | |

### EMERGENCY MOTION TO QUASH,
### AND/OR ALTERNATIVELY, EMERGENCY MOTION FOR PROTECTIVE ORDER,
### AND MOTION FOR SANCTIONS

Registrant/Applicant Hatch Chile Company, Inc. ("HCC") hereby submits this Emergency Motion to Quash, and/or Alternatively, Emergency Motion for Protective Order and Motion for Sanctions ("Emergency Motions").[1] As basis for these motions, it is submitted that El Encanto, Inc.'s and Hatch Chile Association's ("Petitioners") issuance on December 1, 2014 of two Subpoenas to Produce Documents ... in a Civil Action, which issued from this District and was served upon at least one of HCC's co-packers[2] in New Mexico (Border Foods, the "Supplier") is improper, untimely and objectionable for a number of reasons.  Moreover, these subpoenas violate the relevant Trademark Trial and Appeal Board ("TTAB") rules concerning discovery ("TTAB Rules"), and intentionally or negligently violate the Federal Rules of Civil

---

[1] This case is being opened as a "Miscellaneous Case", as there is not currently a pending civil action in the District of New Mexico.

[2] The term "co-packers" is regularly used in the industry to also refer to suppliers.  *See e.g*., Exhibits 1a and 1b.

Procedure by the Petitioners in their attempt to circumvent the TTAB Rules in order to obtain information they could not otherwise get because of the Petitioners own inaction and/or significant delay.[3]

HCC attempted to meet and confer with Petitioners' counsel twice during the week of December 1, 2014, and provided the relevant TTAB Rules regarding the untimely issuance of the Subpoenas without a corresponding notice of discovery deposition, without resolution.

## I. STATEMENT OF FACTS ("SOF")

1. Based upon a motion to extend discovery deadlines filed by the Petitioners, the TTAB issued an Order on September 30, 2014 ("TTAB Order") resetting future deadlines in the TTAB Proceeding, which included the re-opening of discovery for an additional eight (8) weeks. *See* Exhibit 2, *p*. 7.

2. Through the TTAB Order, discovery closed in this proceeding on December 1, 2014. *Id.*

3. As part of the TTAB Order, the TTAB specifically stated that "since the Board has granted [Petitioners'] motion to extend trial dates, *the Board finds that there is sufficient time left in the discovery period to take such expert witness discovery, as well as any other fact discovery the parties may require and which is permitted by this orde*r[.]" *See* Exhibit 2, *p*. 8 (*emphasis added*).

4. Despite the September 30 TTAB Order re-opening discovery for another eight (8) weeks, the Petitioners waited until six (6) weeks later in which to notice the deposition of HCC's Rule 30(b)(6) corporate representative. *See* Exhibit 4 (notice dated November 18, 2014, setting the deposition date for November 25, 2014).

---

[3] The case pending before the TTAB captioned *El Encanto, Inc. et al. v. Hatch Chile Company, Inc*. (Opposition No. 91204917 (parent)) is a consolidated proceeding before an administrative arm of the U.S. Trademark Office (the "TTAB Proceeding").  The TTAB Proceeding has been ongoing since early 2012.

5. HCC's Rule 30(b)(6) corporate representative deposition of Mr. Steve Dawson was taken on November 25, 2014 in Savanna, Georgia.

6. On December 1, 2014 (the date discovery was to close in the TTAB Proceeding), the Petitioners issued twelve (12) subpoenas to HCC's co-packers through the United States, including the two subpoenas issued from this Court. *See e.g.*, Exhibits 1a, 1b ("Subpoenas[4]"); *see also* Exhibit 7. The various subpoenas were captioned under the district court location of each co-packer, and were further captioned under the TTAB Proceeding, being titled "Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a <u>Civil Action</u>" (*emphasis added*). Each subpoena (including the Subpoenas in this case) issued by the Petitioners included the following requests for document production:[5]

> 1. All information, documents, and communications identifying and relating to each and every good you have sold or provided to HCC, including all dates and in what quantities each such good was sold or provided.
>
> 2. All information, documents, and communications identifying and relating to each and every service you have provided to HCC, including all dates that each such service was provided.
>
> 3. All information, documents, and communications relating to each and every "pack plan" and/or any type of purchase order involving HCC.

---

[4] As of the filing date of these Emergency Motions, HCC is only aware that its New Mexico supplier Mizkan Americas Inc. (d.b.a. Border Foods) has been served with Petitioners' subpoena attached as Exhibit 1a. Because the Petitioners have served notice of the issuance of the subpoenas, HCC believes that HCC's other supplier in New Mexico will soon be served with the subpoena attached as Exhibit 1b.

[5] HCC objects to each request as being oppressive, unduly burdensome, vague, ambiguous or otherwise indefinite, overly broad, and being irrelevant to any issue in the TTAB proceeding. Moreover, HCC objects to each request as they request information not reasonably calculated to lead to the discovery of admissible evidence. HCC also objects to each request to the extent it requests information subject to the attorney-client privilege and/or work product, or to the extent it request information which is a trade secret and/or proprietary intellectual property of the Suppliers.

4. All information, documents, and communications relating to any product labels for any goods and/or in connection with any services you have provided to HCC.

5. All information, documents, and communications relating to the <u>formulation</u> of each and every good you have provided to HCC, including but not limited to information regarding the amounts of each ingredient and the quantities and/or percentages of each ingredient that are contained therein. (*emphasis added*)

6. All information, documents, and communications relating to any agreement with HCC to sell or provide any goods or services.

7. All information, documents, and communications relating to the precise geographic origin of each ingredient in each and every good you have sold or provided to HCC.

8. All information, documents, and communications identifying and relating to each and every supplier and/or grower from which you have obtained any good (and/or any ingredient used therein) that you have then sold or provided to HCC.

9. All communications between you and HCC regarding any of the goods (and/or any ingredient used therein) or services you have sold or provided to HCC.

10. All communications between you and any other entity or individual regarding any of the goods (and/or any ingredient used therein) or services you have sold or provided to HCC.

11. All communications between you and HCC, or any other entity or individual, regarding green chiles (whether processed or unprocessed), red chiles (whether processed, unprocessed, dried, dehydrated, and/or blended), spice mixes, jalapeno peppers (whether red and/or green), bell peppers (of any color), serrano peppers (of any color), chipotle peppers, anaheim peppers or chiles, Hatch chiles, chiles from the Hatch Valley region and/or Hatch region, peppers from any other geographic region, and chiles from any other geographic location.

12. All communications between you and HCC, or any other entity or individual, regarding Hatch chiles (red and/or green), the Hatch Valley region and/or Hatch region, chiles from any other geographic location, trademarks relating to the same, and/or legal proceedings relating to the same.

7. The Trademark Trial and Appeal Board Manual of Procedure (TBMP) Rules §§ 406 *et seq.* (2014) govern requests for production in a TTAB Proceeding.  *See* Exhibit 3.

8. TBMP § 406.01 states "Requests for production <u>may not be served on a non-party</u>."  *Id.*, second paragraph (*emphasis added*).

9. While the TTAB Rules allow a party to issue a subpoena *duces tecum*, this type of subpoena must be accompanied by a notice of deposition, and, the request for production must be served at least 30 or 35 days[6] prior to the scheduled date of deposition.  *Id.*, first paragraph.

10. The TTAB does not have the power to modify or quash subpoenas issued through a federal district court.  *See, e.g., Luehrmann v. Kwik Kopy Corp.*, 2 U.S.P.Q.2d 1303, 1304 n.3 (T.T.A.B. 1987); TBMP § 404.03(a).

11. HCC's counsel attempted (via electronic mail communication dated December 3, 2014 and December 5, 2014) to meet and confer with Petitioners' counsel to resolve this dispute and to provide the relevant TTAB Rules regarding the untimely and improper service of the Subpoenas without a corresponding notice of discovery deposition.  In response, the Petitioners' counsel stated that the reason for the last minute issuance of the Subpoenas was because the Petitioners did not get the information they sought from HCC's 30(b)(6) corporate representative so that "your own client is the cause of and precipitated the necessity of requesting this information from non-parties, and if HCC indeed is concerned about the burden on them, it should procure and supply the information itself".  *See* Exhibit 5.  Inexplicably, while the Subpoenas require the production of "documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material", the Petitioners' counsel states that the Subpoenas "issued are not Requests for

---

[6] The phrase "at least" means 30 days if service is made by hand delivery; however, the TTAB Rules specify that the request for production must be made 35 days prior to the scheduled date of deposition if service is made by mail, email or overnight mail.  *See* Exhibit 2, § 406.01, first paragraph.

Production. Instead, we issued subpoenae under Rule 45" citing to the TTAB case of *Dan Foam ApS v. Sleep Innovations*, Cancellation No. 92054201, 106 U.S.P.Q.2d 1939 (May 13, 2013) (attached as Exhibit 6). *Id.*

12. While the TTAB Order extended discovery deadlines, the TTAB Order also resolved various discovery disputes between the parties. One of these disputes involved the Petitioners' motion to compel HCC to divulge "all the ingredients in [its] good[s] and identify the geographic location (including city/region, state and country of each ingredient." *See* Exhibit 2, *pp*. 2 - 3. The TTAB Order acknowledged that HCC affirmatively responded to this discovery request as follows: "HCC has affirmatively stated in response to this interrogatory that it is not in possession, custody, or control of information regarding the geographic origin of the ingredients of the goods at issue; rather, HCC affirmatively stated that such information may be obtained from HCC's third-party co-packers and suppliers who purchase and manufacture HCC's good in question." *Id.*, *p*. 3. Based on this, the TTAB Order recited: "With regard to the portion of the [Petitioners] interrogatory that requests the geographic origin for each ingredient of the goods identified in Interrogatory No. 1, *the [Petitioners'] motion to compel is DENIED inasmuch as <u>the Board finds that HCC has provided a complete and substantive response to this portion of the interrogatory</u>*.". *Id.* (*emphasis added*).

13. Pursuant to FED. R. CIV. P. 45(a)(2), "Issuing Court. A subpoena must issue from the court where the action is pending." Pursuant to FED. R. CIV. P. 45(a)(3), "Issued by Whom. The clerk must issue a subpoena, signed but otherwise in blank, to a party who requests it. That party must complete it before service. <u>An attorney also may issue and sign a subpoena *if the attorney is authorized to practice in the issuing court*</u>." (*emphasis added*).

14. According to her law firm web site, Petitioners' counsel Ms. Martha Fitzgerald (who executed all corresponding Subpoenas in federal courts <u>outside</u> of the State of New Mexico) is licensed to practice law only in the States of California and Colorado. *See* http://www.bhfs.com/people/attorneys/c-f/mfitzgerald#tab33 ("Bar Admissions" tab near bottom of web page).

## II.    ARGUMENT

HCC is a New Mexico corporation selling southwestern-style food products throughout the United States, and uses co-packers of food products who are located throughout the United States.  The Supplier, who is located in New Mexico, is one of HCC's co-packers.

On December 1, 2014 (the deadline for discovery to end in the TTAB Proceeding), the Petitioners issued numerous subpoenas to all of HCC's co-packers (both former, and present), with each subpoena requiring that documents be produced to the Petitioners by December 19, 2014.  SOF ¶ 6.  The relevant subpoenas arising from this District are attached hereto as Exhibits 1a, 1b to these Emergency Motions and are hereby incorporated by reference.

These Emergency Motions are based primarily upon the grounds that the Subpoenas do not comply with the Trademark Trial and Appeal Board Manual of Procedure (TBMP) Rules §§ 406 *et seq*. (2014).  Moreover, the Subpoenas do not comply with the requirements of FED. CIV. P. RULE 45.

Because HCC has a personal right or privilege with respect to the subject matter requested in the Subpoenas, HCC may challenge the issuance of the Subpoenas in this Court. *See Dan Foam ApS v. Sleep Innovations, Inc.*, 2013 TTAB LEXIS 222 (T.T.A.B. 2013) ("we note that a motion to quash a subpoena *duces tecum* may only be made by the party to whom the subpoena is directed, except where the party seeking to challenge the subpoena has a personal

right or privilege with respect to the subject matter requested in the subpoena.") (*citations omitted*); *see also* FED. R. CIV. P. 45(c)(3)(A)(iii) ("On timely motion, the issuing court must quash or modify a subpoena that ... requires disclosure of privileged or other protected matter, if no exception or waiver applies.").

Under TBMP § 406.01, "Requests for production may not be served on a non-party." SOF ¶ 8 (*emphasis added*). The Supplier is not a party in the TTAB Proceeding between the Petitioners and HCC, and for this reason alone, the Subpoenas should be quashed. While the TTAB Rules allow a party to issue a subpoena *duces tecum* to non-parties, it must be accompanied by a notice of deposition, and the request for production *must* be served at least 30 or 35 days[7] prior to scheduled date of deposition. SOF ¶ 9. Thus, if the Petitioners truly desired to obtain documents from the Supplier in the TTAB Proceeding, the Petitioners could have issued a subpoena *duces tecum* with a corresponding notice of deposition at least no later than October 22, 2014 according to the TTAB Rules, but the Petitioners did not, and for this reason as well, the Subpoenas should be quashed.

Indeed, the TTAB specifically stated in its last Order for the TTAB Proceedings that "since the Board has granted [the Petitioners'] motion to extend trial dates, *the Board finds that there is sufficient time left in the discovery period to take such expert witness discovery, as well as any other fact discovery the parties may require and which is permitted by this order*[.]" SOF ¶ 3. Dissatisfied that their motion to compel was denied by the TTAB (SOF ¶ 12), and dissatisfied with HCC's 30(b)(6) deposition testimony (SOF ¶¶ 5, 11), the Petitioners waited until the eleventh hour to try to obtain information from the non-party Supplier by attempting to use this Court's power of subpoena, in clear violation of the relevant TTAB Rules and contrary

---

[7] 30 days if service is made by hand delivery; 35 days if service is made by mail, email or overnight mail. *See* Exhibit 2, § 406.01, first paragraph.

to the TTAB Order.

As an additional grounds to quash the Subpoenas, the issued Subpoenas do not comply with the Federal Rules of Civil Procedure. Namely, under FED. R. CIV. P. 34(b)(2)(A), the party to whom the document request is directed is given a 30 day time period in which to respond, and that is only after the party is served with the subpoena. Rule 45(c)(3) provides that a court must quash a subpoena that "fails to allow a reasonable time to comply." FED. R. CIV. P. 45(c)(3)(A)(i). Although Rule 45 does not define "reasonable time," courts have found that fourteen days from the date of service is not reasonable. *See, e.g., See Urim Corp. v. Krongold*, 2006 U.S. Dist. LEXIS 53420 (N.D. Ga. 2006) (14 days found unreasonable to respond to the subpoena to produce documents); *Brown v. Hendler*, 2011 U.S. Dist. LEXIS 9476 (S.D.N.Y. 2011) (nine days not reasonable); *Cris v. Fareri*, 2011 U.S. Dist. LEXIS 108362 (D. Conn. 2011) (two days not reasonable); *McClendon v. Telohio Credit Union, Inc*., 2006 U.S. Dist. LEXIS 57222 (S.D. Ohio 2006) (six days not reasonable). Thirty days is considered by the district courts to be reasonable time to comply with a subpoena. *In Re: New England Compounding Pharmacy, Inc*., 2013 U.S. Dist. LEXIS 161652 (D.C. Mass. 2013).

In this case, the Supplier's agent for service of process was served with one of the Petitioners' Subpoenas on December 2, 2014, however, each subpoena asks that documents be produced to the Petitioners by December 19, 2014, thereby giving the Supplier only 17 days in which to respond or make objections to the document requests. Moreover, the Supplier's counsel did not receive the subpoena until December 8, leaving only 11 days in which to respond or make objections. Even if the Supplier *could* make this deadline (which it cannot), this task would require a significant amount of time, money and manpower to obtain the requested documents (and to determine whether such documents are privileged or not), in

addition to the Suppliers' normal conduct of day-to-day business, which is another reason for this Court to immediately quash the corresponding subpoena against this non-party Supplier.

There is no doubt that the Petitioners appear to be hiding behind the guise of this Court's power of subpoena to improperly obtain documents that they knew they could never obtain through the TTAB Proceeding because of the Petitioners' own delay tactics. The Petitioners' efforts evidence a callous disregard of the TTAB Rules, the Federal Rules of Civil Procedure, and the integrity of this Court.

The facts show that the TTAB granted the Petitioners' request for an additional eight (8) weeks time to conclude discovery. *See* SOF ¶ 1. The TTAB explicitly specified that this eight (8) week period was more than enough time for the parties to conduct discovery. *Id.*, ¶ 3. Yet, the Petitioners waited six (6) weeks later before they noticed HCC's 30(b)(6) deposition (*Id.*, ¶ 4). Petitioners finally did take HCC's 30(b)(6) deposition on the seventh week (*Id.*, ¶ 5). Due to their own delay, this timing left the Petitioners only one week (during the week of Thanksgiving) to conclude discovery until the close of discovery in the TTAB Proceeding. Because the Petitioners knew that the TTAB would not likely grant another extension of time for more discovery (SOF ¶ 3), and because the Petitioners did not get the answers it wanted to hear from HCC's corporate representative during his deposition (SOF ¶¶ 4, 5, 11), the Petitioners callously decided to attempt to use this Court's power of subpoena (SOF ¶ 6) to obtain documents that they otherwise would not be able to obtain in the TTAB Proceeding (SOF ¶ 6, 10, 11) because discovery was closing in the TTAB Proceeding (SOF ¶ 2) on the same day that the Petitioners issued the Subpoenas (SOF ¶ 6).

These facts clearly indicate that the Petitioners are attempting to circumvent the rules promoted and promulgated by the TTAB, by now turning to the District Court's power of

subpoena, and claiming that the issuance of the Subpoenas falls under Fed. R. Civ. P. 45 (SOF ¶ 11).  The Petitioners know that the TTAB does not have any power to modify or quash a subpoena that is issued by a federal district court.  SOF ¶ 7.  As such, the Petitioners, in apparent desperation, have decided to try to throw everything they can think of at the document production wall, to see what, if anything, sticks.

The Petitioners' demonstrated desperation in the TTAB case is also strongly evidenced by the fact that the Petitioners did not follow either the TTAB Rules (SOF ¶¶ 8, 9) or the requirements of FED. R. CIV. P. 45.  Namely, the TTAB Rules prevent the service of requests for production on non-parties such as the Supplier.  SOF ¶ 8.  While the TTAB Rules allow for the issuance of a subpoena *duces tecum* on a non-party, this type of subpoena must *always* be accompanied by a notice of deposition on the non-party, and this subpoena *must* be served at least thirty or thirty-five days before the deposition date.  SOF ¶ 9.  Because the Supplier is <u>not</u> a party to the TTAB Proceeding, and because the Petitioners <u>did not</u> serve the Supplier with any subpoena *duces tecum* and corresponding notice of deposition within the relevant time period, the Petitioners have clearly failed to follow the applicable TTAB Rules.

Then, because the Petitioners intentionally waited so late to depose HCC's corporate representative during the 8-week re-opened discovery period (SOF ¶¶ 1, 2, 3, 4, 5), the Petitioners realized that there was no time left during the TTAB discovery period in which to otherwise obtain requests for production of documents from HCC's co-packers (to supplant their fishing expedition) <u>unless</u> the Petitioners could somehow use the subpoena power of this federal district Court.  While not precisely germane to these Emergency Motions, it is noteworthy that the Petitioners are attempting to use the power of other Federal Courts' subpoena power, but, without authority in almost all of the other subpoenas issued.  To wit, Rule 45 clearly states that

a subpoena may be issued by an attorney, but only if the attorney is authorized to practice in the issuing court. SOF ¶ 13. In their desperation and haste to issue the subpoenas, the Petitioners issued subpoenas in the following Federal Court districts: C.D. Ca., N.D. Ill., S.D. Ind., W.D. La., S.D. Oh., E.D. Tex., N.D. Tex. and W.D. Tex. *See* Ex. 7.[8] However, in desperation and haste, the Petitioners' counsel Martha Fitzgerald flagrantly failed to follow Rule 45's requirement that she could issue requisite subpoenas <u>only if she is authorized to practice in these districts</u>. Ms. Fitzgerald is not authorized to practice in any of these districts (SOF ¶ 14). As a consequence, every subpoena issued outside of the States of California or New Mexico is void and invalid *ab initio* under Rule 45. *See Wagner v. Gallup, Inc.*, 2014 U.S. Dist. LEXIS 84188, 6-7 (D. Minn. 2014) ("An attorney issuing a subpoena pursuant to Rule 45 invokes the authority of the issuing court. As the evolution of the Rule and the requirement for a subpoena to 'state the court from which it issued' show, an attorney issues a subpoena on behalf of a court.").

Because of the Petitioners' counsel's actions, the Petitioners have now forced the Supplier, HCC and HCC's other suppliers to expend a substantial amount of time, money and resources to research these issues, and prepare and file these Emergency Motions in various federal courts throughout the United States, because if not, the Supplier and other suppliers may be held in contempt of court. *Wagner*, 2014 U.S. Dist. LEXIS 84188, 6-7 ("the failure to comply with a subpoena made under Rule 45 may be deemed a contempt of court in the absence of an 'adequate excuse.'"); *see also In re Kingdom of Morocco v. Kingdom of Morocco*, 2009 U.S. Dist. LEXIS 42540, at *5-6 n.4 (S.D.N.Y. 2009) ("Valid attorney-issued subpoenas under Rule 45(a)(3) operate as enforceable mandates of the court on whose behalf they are served.").

The error of Petitioners' counsel in failing to timely file requests for production from

---

[8] Exhibit 7 contains only the first page of the other subpoenas which were issued by Petitioners' counsel for the federal court districts for which she is not authorized to practice. The remaining pages of these subpoenas duplicate the subpoena attached as Exhibits 1a and 1b.

HCC's suppliers and/or timely notice the depositions of such co-packers (some twenty-three months after the TTAB Proceedings were commenced) during the extended eight (8) week re-opening of discovery is not the fault of, and should not become the burden of, either the Supplier or HCC.  *Cf.* SOF ¶ 11 ("if HCC indeed is concerned about the burden on them, it should procure and supply the information itself").  As noted above, the Petitioners attempted in TTAB discovery to force HCC to turn over ingredient lists containing the geographic origin of its ingredients, for which HCC responded many months earlier that it did not have such information, and that this information was available from its suppliers.  SOF ¶ 12.  The TTAB agreed with HCC, and denied the Petitioners' motion to compel seeking this exact same information that the Petitioners are now seeking through these subpoenas.  *Id.*  Moreover, the TTAB specifically anticipated such dilatory ongoing behavior of the Petitioners in its Order and found that the eight week extended discovery period was more than sufficient time in which to conclude discovery, which Petitioners have failed and omitted to do now, and for which HCC and its co-packers should not be burdened, harmed or punished.  SOF ¶ 3.

      In sum, the Subpoenas can only be classified as untimely and improper requests for production that the Petitioners could have, but chose not to, obtained during the discovery period set by the TTAB, and they should not now be permitted by this Court.  While the Petitioners caption the Subpoenas as arising from a "civil action" (*see e.g.*, Exhibit 1), there is no pending civil action pending in any federal district court.  This captioning can only be viewed as a tactic used by Petitioners to attempt to scare or intimidate any party served with the subpoenas that they might be subject to severe punishment from the Federal courts.  The Subpoenas issued from this District Court by the Petitioners should be quashed and this Court should issue a blanket protective order in order to protect the Supplier and/or HCC for this last minute attempted

circumvention of both the TTAB Rules and the Federal Rules of Civil Procedure by the Petitioners.

Because of the timing of the Petitioners' issuance of the Subpoenas, HCC asks this Court to grant the Emergency Motions on an emergency basis and order Petitioners to cease and desist from attempting to obtain any document production from the two New Mexico suppliers, and/or in the alternative, order that the two suppliers are not required to take any action in connection with the improvidently issued Subpoenas.[9]  Moreover, HCC asks this Court to pre-emptively prevent the re-issuance of any "corrected" Federal court subpoenas by the Petitioners under any rule of the Federal Rules of Civil Procedure because the TTAB Order setting the deadline for the close of discovery in the TTAB Proceeding has now long passed.

*Motion for Sanctions*

While in the due course of fair litigation, HCC would not normally request sanctions pursuant to FED. R. CIV. P. 11, but the Petitioners conduct in issuing the Subpoenas as identified *supra,* and for which the Petitioners have declined to withdraw, such conduct dictates that sanctions be requested and granted. *See e.g., Wagner*, 2014 U.S. Dist. LEXIS 84188, 7-8 ("an attorney issuing a subpoena may not take her role lightly and is duty-bound to ensure the propriety of a subpoena that she signs and serves."); *see also United States v. Welch*, 2012 U.S. Dist. LEXIS 66165 (D. Colo. 2012) ("[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person

---

[9] Among the other impermissible items that Petitioners are seeking through the Subpoenas is the pricing for the goods which HCC sells pursuant to trademarks owned by HCC ("Pricing"). *See* SOF ¶ 6.  El Encanto, Inc. is a direct competitor of HCC and the Pricing is a trade secret of the HCC and El Encanto should not be allowed to obtain that proprietary information through this "fishing expedition" using improper bait.  Nothing in the Pricing is relevant to the TTAB Proceeding and this Court should permanently order Petitioners to cease and desist from such illegal and inappropriate interrogation of the HCC's co-packers.

subject to the subpoena. The issuing court must enforce this duty and may impose an appropriate sanction … on a party or attorney who fails to comply."). The Petitioners' counsel committed a serious dereliction of her duty as an officer of this Court when she issued numerous invalid subpoenas hastily, and solely because discovery was closing the same day in the TTAB Proceeding. While HCC requested the Petitioners to voluntarily withdraw the Subpoenas based on the foregoing facts, the Petitioners have not withdrawn the Subpoenas. SOF ¶ 11.

Courts have sanctioned parties who fail to comply with Rule 45. *See Firefighters' Institute for Racial Equality ex rel. Anderson v. City of St. Louis,* 220 F.3d 898 (8th Cir. 2000) (improperly served nonparty subpoenas quashed); *Murphy v. Board of Education of the Rochester City School District*, 196 F.R.D. 220 (W.D.N.Y. 2000) (attorneys' fees awarded for repeated violations of Rule 45(b)(1)).

If these Emergency Motions are granted in whole or in part, HCC asks that all costs and fees incurred by any Supplier or HCC, which is associated with the Petitioners' issuance of the two District of New Mexico Subpoenas, be reimbursed by the Petitioners. HCC also asks for any other relief the Court may deem necessary to sanction the Petitioners for their improper conduct based on the foregoing facts.

### III.  CONCLUSION

For all of the foregoing reasons, HCC asks this Court to immediately quash the New Mexico-issued Subpoenas and/or issue a blanket protective order, and hold that any request(s) by the Petitioners that either this proceeding be suspended or stayed, or that any of the Petitioners' request(s) asking to extend all future TTAB Proceeding discovery deadlines be extended, be denied. HCC also respectfully requests this Court to issue any sanctions deemed

necessary to prevent any further like conduct from the Petitioners from further occurrence.

Dated: December 12, 2014

                Respectfully submitted,

                By:  /s/ Kevin Lynn Wildenstein         .

                  Kevin Lynn Wildenstein
                  Counsel for Hatch Chile Company, Inc.

                SOUTHWEST INTELLECTUAL PROPERTY SERVICES, LLC
                9400 Holly Avenue NE, Building 4
                Albuquerque, New Mexico  87122
                (505) 944-2500
                (505) 944-2501 (fax)

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was served by hand delivery and transmitted by electronic mail to the following parties of record this 12th day of December, 2014:

| | |
|---|---|
| Nury Yoo<br>Brownstein Hyatt Farber Schreck<br>201 Third Street NW, Suite 1700<br>Albuquerque, NM 87102-4386<br>NYoo@BHFS.com<br>Counsel for El Encanto, Inc. and Hatch Chile Assn. | Ross Perkal<br>1015 Laurel Drive S.E.<br>Albuquerque, NM  87108<br>rossperkal@aol.com<br>Counsel for Hatch Chile Comp. Inc. |

                **Southwest Intellectual Property Services, LLC**

                **By:   /s/ Kevin Lynn Wildenstein         .**