IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

**Case No. 1:14-MC-00045-MV**

|  |  |  |  |
|---|---|---|---|
|  | } | **TTAB Opposition Nos.** | **91204917  (parent)** |
| EL ENCANTO, INC., and | } |  | 91207335 |
| HATCH CHILE ASSOCIATION | } |  | 91207365 |
| Petitioners, | } |  |  |
|  | } | TTAB Cancellation No. | 92056871 |
| v. | } |  |  |
|  | } |  |  |
| HATCH CHILE COMPANY, INC. | } |  |  |
| Registrant/Applicant | } |  |  |

**REPLY BRIEF TO RESPONSE TO EMERGENCY MOTION TO QUASH,
AND/OR ALTERNATIVELY, EMERGENCY MOTION FOR PROTECTIVE ORDER,
AND MOTION FOR SANCTIONS**

Registrant/Applicant Hatch Chile Company, Inc. ("HCC") hereby submits its reply brief corresponding to its Emergency Motion to Quash, and/or Alternatively, Emergency Motion for Protective Order and Motion for Sanctions ("Emergency Motions").

**I.     PETITIONERS' "INTRODUCTION" IS INACCURATE AND MISLEADING**

El Encanto, Inc. and the Hatch Chile Association (the "Petitioners") initially question why HCC's Emergency Motions are titled "emergency" asserting HCC "waited two weeks after the subpoenas were issued, filed the Motion on the Friday before the deadline to file motions to quash, and did not serve or otherwise provide a copy to [the Petitioners] until the close of business and late in the evening on Friday." Response, *p*. 3.  The answer is simple.  HCC's first co-packer was not served with a subpoena until Dec. 12, 2014, the very same day that HCC filed its Emergency Motions.  HCC would likely not have standing to open this case unless, and until, one of its co-packers was served with the subpoena. Thus, the Petitioners cannot claim that there is no urgency to HCC's Emergency Motions, especially when the timeframe set by the Petitioners to respond to the subpoenas is December 19 (in violation of FED. R. CIV. P. 34(b)(2)(A)).

Turning to the events in the TTAB proceeding, the TTAB opened discovery on June 20, 2013. *See* Exhibit 8, *p*. 6.  The Petitioners did not serve any discovery requests on HCC until eight

months later (February 21, 2014 - *see* Exhibit 9).  As part of these first discovery requests, the Petitioners served an interrogatory upon HCC requesting information relating to ingredients in HCC's food products (the <u>same</u> information they are now seeking through the Subpoenas).  *Id.*, Interrogatory No. 4.  HCC served its interrogatory responses on March 28, 2014, responding "each of the goods offered by HCC contain a label identifying the ingredients in the good. Upon information and belief, the Petitioners already have HCC labels which include ingredients. To the extent this belief is not correct, HCC labels have been or will be produced. As to the 'geographic origin (including city/region', state and country)" of each ingredient, HCC states that packers/suppliers of HCC goods would have this information, as the packers/suppliers are the entities who manufacture and produce the goods for HCC".  *See* Exhibit 10 (Petitioners mis-categorize this response as "Applicant *refused* to provide such information" – *see* Response, *p*. 2).

After Petitioners complained that HCC's response to the interrogatories was not definitive, in good faith, HCC served its First Supplemental response to the interrogatory on May 13, 2014, asserting "HCC states that it does not definitively possess the information requested in this Interrogatory with regard to the HATCH Mark. HCC reiterates that HCC's packers/suppliers of HCC goods would have the requested information, as the packers/suppliers are the entities who manufacture and produce the goods for HCC, and who would have the most reliable and complete information for this Interrogatory."  *See* Exhibit 11, *pp*. 9 - 10.

These interrogatory responses are consistent with what HCC's 30(b)(6) corporate representative testified to, and to which the Petitioners have known since March 28, 2014, namely, that HCC's co-packers are the likely parties to have any information relating to ingredients in HCC's food products.  Despite this knowledge, the Petitioners filed a Motion to Compel on May 19, 2014 arguing to the TTAB that HCC's responses were "inadequate".  *See* Exhibit 12.  On September 30, 2014, the TTAB agreed with HCC that "HCC has affirmatively stated in response to this interrogatory that it is not in possession, custody, or control of information regarding the geographic origin of the ingredients of the goods at issue; rather, HCC affirmatively stated that such

information may be obtained from HCC's third-party co-packers and suppliers who purchase and manufacture HCC's good in question", and denied the Petitioners' Motion to Compel on this topic. *See* Emergency Motions, SOF ¶ 12.  Thus, even as late as September 30, 2014, the Petitioners had more than enough time to comply with the relevant TTAB rules (*see* Emergency Motions, SOF ¶¶ 7 - 10) and with the relevant Federal Rules of Civil Procedure to notice the co-packers for a deposition and request documents, but they did not.

The Petitioners argue that it was the availability of Steve Dawson (during the week of Thanksgiving) which prevented them from taking his deposition any earlier.  *See* Response, *p*. 3. This argument is another red herring and intentionally misleading, because the Petitioners did not request Mr. Dawson's availability for a deposition until the morning of October 23, 2014 (the date of the email attached to the Response, Ex. 1), which corresponds to week three of the extended eight week discovery period set by the TTAB (and even after being provided with Mr. Dawson's availability, the Petitioners waited until November 18 to notice his and HCC's 30(b)(6) depositions, which is week six in the extended eight week discovery - *see* Emergency Motions, SOF ¶ 4). Notably, as evidenced by an email dated October 22, 2015 (Exhibit 14), HCC's counsel was the party who initiated a meet and confer for depositions *as early as October 15, 2014*, for which the Petitioners' counsel never responded until the email dated October 23 was transmitted (Response, Ex. 1).  Indeed, Petitioners' counsel states in the email thread dated October 17 that "We will be in touch next week regarding depositions", indicating that the Petitioners still had not made any requests about Mr. Dawson's availability until October 23, and upon which HCC's counsel immediately advised of Mr. Dawson's availability on the same day.  The Petitioners' argument that the Subpoenas are required because Mr. Dawson was not available for depositions except for Thanksgiving week is absolutely no excuse and is not good grounds as to why the Petitioners did not seek this information much earlier in the TTAB proceeding, and within the TTAB Rules.

Despite all of these documented events, the Petitioners continued on their fishing expedition by filing the Subpoenas, both in the District of New Mexico and at least eight other federal courts.

Yet, the Petitioners fail to disclose that they had from June 20, 2013 – June 8, 2014 in the TTAB Proceeding (11 months, two weeks and five days) in which to seek the information from HCC's co-packers, and the TTAB further granted the Petitioners another eight (8) weeks (September 30, 2014 – December 1, 2014) to conduct the same discovery, <u>but the Petitioners did not do so</u>.  Thus, while the Response brief tries to paint a picture that the Petitioners have had clean hands in its scavenger hunt for the over year-long discovery period in the TTAB proceeding, nothing is further from the truth.  Moreover, as indicated in HCC's Emergency Motions, the TTAB rules prevent use of a subpoena in the manner in which the Petitioners are now attempting to use the Subpoenas.

Finally, as stated in the Emergency Motions (*p*. 12), the Petitioners issued numerous other subpoenas on HCC's co-packers in other federal court jurisdictions.  Each of these subpoenas requested document production in Albuquerque, New Mexico.  Upon information and belief, these co-packers will soon be filing separate Objections to, and/or Motions to Quash in their corresponding federal court districts.  If so, HCC asks this Court to keep this case open, because HCC intends to subsequently ask this Court to consolidate such Objections to, and/or Motions to Quash in this District pursuant to Fed. R. Civ. P. 45 as the "enforcement court", and also because the facts of this case qualify as exceptional circumstances.  *See Simon et al. v. Taylor et al*., 2014 U.S. Dist. LEXIS 164774, *51 (D.N.M. 2014) (revised rule 45(d)(3) provides that motions to quash a subpoena can be brought in the district where compliance is required, the enforcement court).

## II.   PETITIONERS' ISSUANCE OF SUBPOENAS IS INVALID.

1. <u>District Court of New Mexico is an Enforcement Court Because the Subpoenas Seek Document Production in Albuquerque and Thus May Appropriately Limit Other Courts' Subpoenas.</u>

Petitioners erroneously contend that this Court does not have the authority to quash or place a protective order on any subpoena issued through any district court other than the District of New Mexico.  The law is to the contrary.  This Court, as the "enforcement court", has the authority to

quash the Subpoenas issued in the District of New Mexico and all of the subpoenas erroneously issued by Petitioners' counsel who are not licensed in other federal district courts.[1]

Petitioners' argument does not comport with the revised Rule 45(d)(3), which was adopted on December 1, 2013. Revised Rule 45(d)(3) expressly provides that motions to quash a subpoena can be brought in the district where compliance is required, known as the "enforcement court," rather than the issuing court. *See* FED. R. CIV. P. 45(d)(3). This revised rule has already been recognized in a United States District Court for the District of New Mexico recent decision. In *Simon v. Taylor*, 2014 U.S. Dist LEXIS 164774 (D. N.M. Nov. 18, 2014), the Honorable Judge James Browning considered the applicability of Rule 45(d)(3) and noted that the enforcement court where compliance is required has the authority to quash a subpoena.

The case cited by Petitioners does not address the change in Rule 45(d)(3) that occurred in 2013 because that case was decided in 2012. *See E.E.O.C. v. Original Honeybaked Ham Co. of Georgia, Inc*., 2012 WL 934312 (D. Colo. 2012). Thus, Petitioners' reliance on this authority is misplaced and has no merit. Consequently, not only does this Court have the authority to quash the subpoenas issued by a New Mexico attorney to a former New Mexico corporation, this Court also has the express authority to quash subpoenas which are to be enforced in this State. Because all subpoenas issued by Petitioners' New Mexico counsel require production of the documents in New Mexico, not in the issuing state, this Court may quash all of those invalid subpoenas as well.

---

[1] Rule 45(a)(3) specifies that a subpoena may be issued by a clerk of the federal court or by an attorney if the attorney is authorized to practice in the issuing court. The attorney is permitted to issue the subpoena as an officer of (A) a court in which the attorney is authorized to practice; or (B) a court for a district where the production is to be made, if the attorney is authorized to practice in the court where the action is pending. *See* FED. R. CIV. P. 45(a)(3). Upon a review of the website for the law firm issuing the subpoena, the attorneys issuing the subpoenas, Ms. Fitzgerald and Ms. Nury, are not authorized to practice in the majority of districts that they have purported to be issuing subpoenas. Consequently, the attorney's issuance of the subpoena pursuant to subsection 45(a)(3)(A) is unavailing. In addition, Rule 45(a)(3)(B) cannot be met because the attorneys for Petitioners did not have authority to issue a Subpoena that requires the Supplier to produce documents outside of the state in which the subpoenas were served because the subpoena would violate the geographic limitations of Rule 45. *See Battle v. Chi. Cycle, Inc.,* 2012 U.S. Dist. LEXIS 161978 (N.D. Ohio 2012)(an attorney is not permitted to issue a subpoena on behalf of a court for production of documents in another district more than 100 miles away); *Avante Intern. Tech. Corp. v. Diebold Election Sys.,* 2007 U.S. Dist. LEXIS 67048 (N.D. Ohio 2007)(attorney could not issue subpoena where not licensed to practice law in state where subpoena was issued and which required production outside the district); *Anderson v. Gov't of the V.I.,* 180 F.R.D. 284 (D. V.I. 1998)(court cannot order a non-party outside of its jurisdiction to produce documents to a place within its district; attorney cannot issue subpoena requiring recipient of subpoena to produce documents outside the geographic limitations of Rule 45).

While Petitioners contend that the subpoenas issued are valid, Petitioners failed to provide the reasons why they did not (and could not) comply with another mandatory provisions of Rule 45, which requires that a subpoena "**must issue** from the court where the action is pending." *See* Fed. R. Civ. P. 45(a)(2); *Simon,* 2014 U.S. Dist. LEXIS 164774.  In this case, there was no action pending in any federal district court, except for the new proceeding filed by HCC solely for the purpose of filing its Emergency Motions to quash the improper subpoenas issued by Petitioners.  In fact, the underlying action is pending before the TTAB, not the United States District Court for this district or any other district.  Consequently, the Subpoenas are invalid on their face.

2. <u>HCC Has a Legitimate Interest in the Quashing of the Third-Party Subpoenas.</u>

In their Response, Petitioners seem to overstate their view of the law on standing. Petitioners claim that "it is well-established that a party to a case generally has no standing to quash a subpoena served on a third person."  *See* Response at 5, Section II.  In fact the law is not that narrow, as was described in the decision Petitioners cited in *Morris v. Ulibarri,* No. 06-CV-1052 MV/DJS [Doc. 62].  Where a party has a personal right or privilege with respect to the subject matter requested in the subpoena, the party <u>does</u> have standing to move to quash an improper subpoena.  *Id.* (*emphasis added*).  *See, e.g., EEOC v. JBS USA, LLC,* 2014 U.S. Dist. LEXIS 141356 (D. Col. 2014)(employment records are private); *EEOC v. 704 HTL Operating, LLC,* 2012 U.S. Dist. LEXIS 61248 (D. N.M. 2012)(medical and employment records are private and may be subject to protective order if not in issue in the case).  "A non-party has standing to move to quash a subpoena where the subpoena infringes upon its legitimate interests."  *Simon*, 2014 U.S. Dist. LEXIS 164774, *97-98 (*citing Jee Family Holdings, LLC v. San Jorge Children's Healthcare, Inc.*, 297 F.R.D. 19, 20 (D.P.R. 2014)("The non-parties, claiming that the records sought include their confidential financial information, have standing to object to the subpoenas.").

In addition, the United States District Court for the District of New Mexico has held that "a party may make a motion to quash a subpoena because the issuing court had no jurisdiction to issue the subpoena."  *Clower,* 2013 U.S. Dist LEXIS 65036.  When a subpoena is void, the Court does not have jurisdiction to order a non-party to produce documents pursuant to a subpoena.

Consequently, the fact that Petitioners' issued the subpoena from this District Court, even though there was no case pending in this Court until HCC filed this proceeding, is grounds in and of itself to grant the motion to quash.

Contrary to Petitioners' argument, HCC has standing because it has a privilege and right to protect the documents being sought by the Petitioners from production. Petitioners admit that HCC has stated that it has a privilege and right to protect the documents, but merely questions whether HCC has sufficiently supported its rights and privilege with sufficient information for the Court's review. Disclosure of trade secrets and confidential commercial information may be protected in a motion to quash. *See, e.g., Clower v. Geico Ins.,* 2013 U.S. Dist. LEXIS 65036 (D.N.M. 2013).

HCC and its co-packers who have been subpoenaed by Petitioners should be protected from producing the documents for numerous reasons, including because the documents requested contain confidential trade secrets and proprietary information. Although discovery in federal court is broad, it expressly excludes from discovery matters that are privileged. *See* Fed. R. Civ. P. 26(b)(1). In order to mitigate the substantial risk to litigants' and third-parties' privacy, courts are given broad discretion to craft an appropriate remedy to protect the parties and others from disclosure of sensitive documents. *See, e.g., Zyprexa Litig.,* 474 F. Supp. 2d 385, 415 (2007). Specifically, Rule 26(c) provides for the issuance of an order requiring "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." *See* FED. R. CIV. P. 26(c). This protection in not merely limited to "true" trade secrets. *See Zyorexam,* 474 F. Supp. 2d at 415, *citing,* 8 Wright & Miller at 2043.

Courts have also protected documents containing trade secrets and refused disclosure of confidential commercial information such as "pricing[2], profits, costs, overhead, manufacturing

---

[2] The Response states "The issue of pricing is … relevant to the issue of sourcing of ingredients … as there has been testimony … regarding pricing having an impact on whether particular ingredients [were] sourced from the Hatch Valley[.] Response, footnote 6. However, there was no "testimony" regarding pricing or the impact pricing has on anything. The Petitioners did ask questions to Mr. Dawson at his deposition about pricing, to which he testified he did not know. Moreover, the TTAB Protective Order mandates deposition testimony to remain confidential for 30 days after the deposition, and a detailed examination of Ex. 3 to the Response brief shows that HCC's counsel expressed significant dismay for Ms. Yoo's (Petitioner's counsel) decision to unilaterally contact the court reporter to try to "finalize"

specifications, customer lists, price structure, and dealing with a common customer." *Moore U.S.A., Inc. & Toppan Forms Co., Ltd. v. Standard Register Co.,* 2000 U.S. Dist LEXIS 9137 (W.D.N.Y. 2000); *Vesta Corset Co. v. Carmen Founds.,* 1999 U.S. Dist. LEXIS 124, at 5 (S.D.N.Y. 1999); *PepsiCo Inc. v. Redmons,* 1995 U.S. Dist LEXIS 19437 (N.D. Ill. 1995)(confidential customer information, confidential pricing procedures, and other confidential methods may not be disclosed); *Synthes Inc. v. Emerge Med. Inc.,* 2014 U.S. Dist. LEXIS 78218 (E.D. Pa. 2014)(customers, prices, pricing, policies, usage histories, and manufacturing costs was confidential information and could not be disclosed).  A blanket protective order protects parties who are competitors from disclosure of trade secrets and other confidential commercial information. *See COA, Inc. v. Xiamei Houseware Group Co., Inc.,* 2012 U.S. Dist LEXIS 125453 (C.D. Ca. 2012)(confidential business information such as sales data, customer lists, cost-of-goods sold, pricing, manufacturing agreements, and information qualify as trade secrets and must be protected from disclosure to competitors in the market so as to avoid competitive harm); *Ventana Sales Design & Mfg. v. Newell Window Furnishings,* 2012 U.S. Dist. LEXIS 171356 (C.D. Ca. 2012).

As these cases uniformly demonstrate, when a direct competitor is attempting to circumvent legitimate avenues of discovery in a proceeding already in place, such as the TTAB Proceeding in this instance, to obtain confidential trade secret information, a blanket order quashing the subpoenas is appropriate and should be entered.  Even if a protective order before the TTAB proceeding exists, the Petitioners should never have issued the subpoenas to HCC's suppliers.  The documents being sought are protected trade secrets and are based on confidential pricing, policies, usage histories, and manufacturing costs.  There is nothing being sought by Petitioners that is not privileged and protected from disclosure.  Thus, HCC has the right and privilege to request this Court's assistance in quashing the subpoena to Border Foods (which no longer exists, but is now known as Mizkan Americas, Inc., and all of the other suppliers who have been served with identical subpoenas within the past week.

---

Mr. Dawson's transcript (*Id.*, *p.* 3), when in fact the agreement made after the depositions between Mr. Wildenstein and Ms. Yoo was directly contrary to her actions (*Id.*, *pp.* 2-3).

3.  <u>HCC's Emergency Motions are Supported by Relevant TTAB Rules and by Federal Law</u>

As identified in HCC's opening brief, the Emergency Motions are supported by the relevant TTAB Rules relating to discovery, and the relevant Federal Rules of Civil Procedure relating to the issuance of subpoenas. While the Response argues that neither the relevant TTAB Rules nor the relevant Federal Rules of Civil Procedure prevent the Petitioners' issuance of the subpoenas, the Petitioners ignore the fact that the TTAB Rules required them to issue such subpoenas no later than October 22, 2014 (*see* Emergency Motions, *p*. 8) as authorized by TTAB Rules, but did not.

The Petitioners continued reliance on the *Dan Foam* case to argue that third party subpoenas in TTAB cases are *always* valid is equally unavailing, as this case is not on point. In *Dan Foam*, the petitioner served a subpoena *duces tecum* on a third party without notifying the respondent. *See* Emergency Motions, Exhibit 6. Ten days later, the third party produced documents, and mailed a copy to the respondent. *Id.* The Respondent did not get the subpoena (and the documents produced) until after it received the copy from the third party. *Id.* The Respondent filed a motion to quash the subpoena under Fed. R. Civ. P. 45(b)(1), arguing that the petitioner failed to serve the subpoena on the respondent prior to the date of service on the third party. The facts of *Dan Foam* differ significantly from the facts in the present case, in that the *Dan Foam* subpoena was issued nearly <u>four months before the close of TTAB discovery</u>. In light of this, the TTAB ruled "With such documents in its possession, respondent could have sought its own subpoena of [the third party] to obtain additional documents and/or a discovery deposition of a representative from [the third party], but did not so seek" and thus declined to quash the subpoena. *Id.* at *10-11. In contrast, the Petitioners did not issue the subpoenas until the<u> last day </u>of extended discovery set by the TTAB.

Indeed, a recent decision concerning a district court's jurisdiction for subpoenas issued to third parties in a TTAB proceeding may be illuminating. In *Peer Bearing Co. v. Roller Bearing Co. Of Am., Inc.*, a federal district court examined whether relevant U.S. Patent and Trademark Office ("USPTO") statutes relating to subpoenas gives a federal court jurisdiction over third-party subpoenas which are used in USPTO proceedings. *See* Exhibit 13, *Peer Bearing Co. v. Roller Bearing Co. of Am., Inc.*, 2012 U.S. Dist. LEXIS 179782 (E.D. Pa. 2012). *Peer Bearing* involved a

pending trademark opposition before the TTAB, where the defendant issued two federal court subpoenas on third parties pursuant to a USPTO statute.  *Id.* at *1.  The third parties moved to quash the subpoenas.  *Id.* at *2.  The issue examined was whether the USPTO statutes authorized courts with the power to issue subpoenas.  The court first examined the powers Congress bestowed upon the USPTO, and found that Congress gave the USPTO the "power to 'establish regulations … which shall govern the conduct of proceedings in the [USPTO]'".  *Id*. at *7.  The court noted that the Federal Circuit held that this power was the broadest type of rule-making power over USPTO's proceedings so that the USPTO has "plenary authority" over its own practices.  *Id.* at *8.

The court noted that the TTAB (through the TBMP rules) authorizes a federal court's use of subpoenas, even as to third parties.  *Id*. at *9.  However, the court noted that federal district courts do not always have the inherent authority to compel discovery in proceedings before the USPTO.  *Id*. at *11-12. The court went on to note that "a number of circuits, including the Third Circuit, have held that [35 U.S.C.] § 24 allows courts to issue subpoenas *only if the discovery* or testimony being sought *is* authorized *by the USPTO*."  *Id*. at *14. (*emphasis added*).  Because the USPTO statutes did not authorize the issuance of the subpoenas, the court found it did not have authority to issue the subpoenas, and quashed the subpoenas.  *Id.* at *22.  The same rational should apply in this case.

It is clear from the facts that the Petitioners had at least three opportunities to issue requisite subpoenas under the TTAB's jurisdiction, but did not, because they did not like the answers they were getting:  1) since March 28, 2014, when Petitioners received HCC's responses to the Petitioners' first discovery requests (*see* Exhibit 10); 2) since on May 13, 2014, when Petitioners received HCC's supplemented responses to the Petitioners' first discovery requests (*see* Exhibit 11); and 3) since September 30, 2014, when the TTAB Order denied the Petitioners Motion to Compel discovery of the same type they are seeking in the Subpoenas (*see e.g.,* Exhibit 12).   In all three instances, the Petitioners did not attempt to seek the information for which the Subpoenas now seek.  *See e.g.*, TBMP § 404.01 ("Discovery depositions must be both noticed and taken prior to the expiration of the discovery period").  The Court should not condone the Petitioners' actions.

Finally, the Petitioners argue that HCC's issuance of discovery to the Petitioners on December 1, 2014 (the last day of TTAB discovery) is equivalent to the Petitioners' issuance of federal court subpoenas to non-parties on the last day of discovery.  Again, another red herring, because the TTAB Rules specifically allow for discovery to be conducted <u>between the parties</u> even up the last day of discovery.  *See* 37 C.F.R. 2.120(a)(3) (discovery requests "must be served on or before the closing date of the discovery period" and responses "must be served within thirty days" from the date of service); *see also Valvoline Co. v. Vortech Eng'g, Inc.*, 1996 TTAB LEXIS 166, 3-4 (T.T.A.B 1996) ("applicant states in its opposing brief that discovery closed on February 28, 1996, and that written discovery therefore needed to be served by January 28, 1996. This is incorrect. At any time during the discovery period, a party may serve written discovery requests upon its adversary. While a party may be well-advised to serve discovery requests early enough to ensure that it will receive responses before the discovery period closes, this is not required. In fact, it is permissible to serve written discovery requests even on the last day of the discovery period."). As noted in the Emergency Motions, the TTAB Rules do not allow third party production requests. See Emergency Motions, SOF ¶¶ 7 - 8.  As a consequence, the Subpoenas should be quashed.

4.  <u>HCC's Motion for Sanctions is Justified</u>

Petitioners spent a quarter of their Response arguing that they should not be sanctioned because their counsel wrongfully issued numerous subpoenas to HCC's co-packers in eight states for which she is not admitted to practice law.  Clearly, this Court has jurisdiction over these subpoenas, and has the power to quash all of these subpoenas. See *Simon*, 2014 U.S. Dist LEXIS 164774. HCC timely discovered Petitioners' counsel's errors and notified her on two occasions of her improper conduct and demanded that Petitioners voluntarily withdraw each of the eight incorrect subpoenas (HCC did not demand that Petitioners withdraw the one subpoena issued in California where the Petitioners' counsel is licensed to practice law, or the two subpoenas issued in New Mexico).  *See* Exhibit 15 (two emails from HCC's counsel to Petitioners' counsel dated Dec. 3 and Dec. 5, 2014).  Indeed, the Response admits the error when it acknowledges that the two New Mexico subpoenas were issued correctly, but the Petitioners are ominously silent (and therefore

tacitly admit) that the other subpoenas issued by Ms. Fitzgerald were not validly issued (with the exception of the subpoena issued by her in California, where she is licensed to practice law).  Even after HCC notified her of her mistake, Ms. Fitzgerald wrongfully refused to acknowledge her errors, and cavalierly responded "your own client is the cause of and precipitated the necessity of requesting this information from non-parties, and if HCC indeed is concerned about the burden on them, it should procure and supply the information itself".  *See* Emergency Motions, SOF ¶ 11.

HCC has now been put on notice by numerous co-packers that they have been served with the wrongfully issued subpoenas. HCC believes that each non-party co-packer from these eight jurisdictions will be submitting their bill for legal fees and costs incurred in connection with either having to retain counsel to object to the overbroad and harassing and burdensome, wrongly issued subpoenas and/or in having had to instruct their counsel to file motions to quash in the states in which they were wrongly issued and served upon the co-packers  HCC will likely not know until early 2015 the exact amount of damages it and/or its co-packers have suffered as a result of Petitioners' counsel's errors and refusal to correct those errors by voluntarily withdrawing the 8 subpoenas.  When HCC has accounted for such damages, including HCC's own legal fees and costs for having to file this Miscellaneous Case to protect its own proprietary trade secrets and intellectual property and to protect its co-packers, who are the lifeline of HCC's business.

HCC alleges that Petitioners' motive in rushing to wrongly issue the subpoenas on December 1, 2014, and then wrongly serving the subpoenas, was to embarrass HCC in front of its co-packers, was to harass HCC, and was to jeopardize and harm HCC's otherwise amicable and long-time, successful working relationship with all of its co-packers.  As a result, HCC asks for sanctions that the Court deems is proper and necessary in light of the Petitioners' actions.

### III.   CONCLUSION

Based on the foregoing Emergency Motions and HCC's reply brief, HCC asks this Court to grant one or more of the Emergency Motions.

Dated: December 17, 2014             Respectfully submitted,


                                     By:  /s/ Kevin Lynn Wildenstein          .
                                          Kevin Lynn Wildenstein
                                          Counsel for Hatch Chile Company, Inc.

                                     SOUTHWEST INTELLECTUAL PROPERTY SERVICES, LLC
                                     9400 Holly Avenue NE, Building 4
                                     Albuquerque, New Mexico  87122
                                     (505) 944-2500
                                     (505) 944-2501 (fax)

## *CERTIFICATE OF SERVICE*

I hereby certify that a copy of the foregoing pleading was served through the DNM's CM/ECF system which causes the following parties of record to be served with this pleading via email notification, and by electronic download, this 17th day of December, 2014, prior to 12:00 pm:

Eric R. Burris
eburris@bhfs.com

Adam E. Lyons
alyons@bhfs.com

Ross Perkal
rossperkal@aol.com
Counsel for Hatch Chile Comp. Inc.

Nury H. Yoo
nyoo@bhfs.com
Counsel for El Encanto, Inc. and Hatch Chile Assn.

                                     **Southwest Intellectual Property Services, LLC**

                                     By:   /s/ Kevin Lynn Wildenstein          .