IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EL ENCANTO, INC. and
HATCH CHILE ASSOCIATION,

      Petitioners,

  vs.                                  No. 14-MC-45

HATCH CHILE COMPANY, INC.,

      Registrant/Applicant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Registrant/Applicant Hatch Chile Company, Inc. ("HCC") Emergency Motion to Quash, and/or Alternatively, Emergency Motion for Protective Order, and Motion for Sanctions [Doc. 1], and Emergency Motion of Mizkan Americas, Inc. ("Mizkan"), Successor in Interest to Border Foods, Inc. to Quash, or Alternatively, Emergency Motion for Protective Order [Doc.9]. The Court, having considered the motions, briefs, relevant law, and being otherwise fully informed, finds that Mizkan's motion to quash will be granted, and HCC's Motion will be denied as moot.

### BACKGROUND

El Encanto, Inc. d/b/a Bueno Foods and the Hatch Chile Association ("Bueno and the Association") are the petitioners in a consolidated trademark dispute proceeding against HCC before the Trademark Trial and Appeal Board ("TTAB"). On December 1, 2014, Bueno and the Association issued, in this Court, subpoenas *duces tecum* to Border Foods and Cervantes Food Products ("Cervantes"), neither of which is a party to the TTAB proceeding. The subpoenas command Border Foods and Cervantes to produce documents, at the office of the attorneys for Bueno Foods and the Association, by December 19, 2014.

On December 12, 2014, HCC commenced the instant miscellaneous action by filing its emergency motion to quash, on various grounds, the subpoenas issued to Border Foods and Cervantes. Bueno and the Association filed a response in opposition on December 16, 2014, arguing, *inter alia*, that HCC does not have standing to move to quash the subpoenas. Thereafter, on December 17, 2014, Mizkan, successor in interest to Border Foods, filed its emergency motion to quash, on various grounds, the subpoena issued to Border Foods. Counsel for Bueno Foods and the Association has represented that it voluntarily withdrew the subpoena issued to Cervantes; accordingly, the Court need only determine the propriety of the subpoena issued to Border Foods.

## DISCUSSION

The rules of the Trademark Trial and Appeal Board provide that requests for production may not be served on a nonparty, but, citing 35 U.S.C. Section 24, state that "if a discovery deposition deponent is a nonparty witness residing in the United States, production of designated documents by the witness at the deposition may be obtained by means of a subpoena duces tecum." TBMP § 406.01. In turn, 35 U.S.C. Section 24 provides that "[t]he clerk of any United States court for the district wherein testimony is to be taken for use in any contested case in the Patent and Trademark Office, shall, upon the application of any party thereto, issue a subpoena for any witness residing or being within such district, commanding him to appear and testify." Section 24 further provides that "[t]he provisions of the Federal Rules of Civil Procedure relating to the attendance of witnesses and to the production of documents and things shall apply to contested cases in the Patent and Trademark Office."

In *Abbott Labs. v. Cordis Corp.*, the Federal Circuit explained that Section 24 was "enacted in 1861 to help the [Patent and Trademark Office ("PTO")] secure needed testimony from recalcitrant fact witnesses." 710 F.3d 1318, 1324 (Fed. Cir. 2013). After providing a detailed account of the legislative history of the Patent Act, the Federal Circuit found that this legislative

history "demonstrates that Section 24 was intended to help the PTO secure deposition testimony it needed by compulsory process, and not to allow parties to secure evidence that the PTO did not consider necessary." *Id.* at 1325.  The Court went on to describe how, "at one time, the prevailing interpretation of 35 U.S.C. § 24 was that it authorized district courts to grant discovery beyond that permitted by PTO discovery rules and rules of admissibility." *Id.* (citations omitted).

The tide, however, "began to turn in 1975, when the Third Circuit, reversing its earlier position, noted the 'anomaly' of 'permitting discovery in the district court while matters are still pending before an administrative agency,' and concluded that this anomaly was inconsistent with the courts' proper role of 'cooperatively complementing the PTO' in managing its proceedings." *Id.* at 1325-26 (quoting *Frilette v. Kimberlin*, 508 F.2d 205, 208, 210 (3d. Cir. 1974) (en banc)). The following year, the First Circuit adopted the same position: "observing that 'historically section 24 developed to provide for the issuance of subpoenas to compel testimony and evidence required in . . . interferences,' the court held that section 24 only allows courts to issue subpoenas to 'aid in PTO-authorized discovery.'" *Id.* at 1326 (quoting *Sheehan v. Doyle*, 513 F.2d 895, 896 (1st Cir. 1975)).  The *Sheehan* court concluded that "section 24 is simply a provision giving teeth, through the courts' subpoena powers, to authority conferred upon the Commissioner of Patents" to regulate PTO proceedings.  *Sheehan*, 513 F.2d at 898.  Like the First and Third Circuits, the Federal Circuit in *Abbott* "conclude[d] that section 24 is designed to allow the courts to render assistance to the PTO."  710 F.3d at 1326.  Although the Tenth Circuit has not similarly opined on this issue, this Court believes that the Tenth Circuit would agree that Section 24 is a mechanism to assist in compelling compliance with PTO discovery rules, and should not be read to allow discovery broader than or different from that permitted by the PTO in its own proceedings.

As noted above, the relevant Trademark Trial and Appeal Board rules do not allow for requests for production to be served on a nonparty, and expressly limit the use of a subpoena *duces*

*tecum* to the situation where a discovery deposition deponent is a nonparty witness, in order to ensure that designated documents are produced by the witness at his or her deposition. The rules provide no mechanism for obtaining documents from a nonparty in any context other than a deposition. Further, Section 24, while noting that the Federal Civil Procedure relating to the production of documents applies to contested cases in the PTO, nonetheless empowers the district court only to issue subpoenas commanding a witness "to appear and testify." *See Abbott*, 710 F.3d at 1326 ("[D]epositions and section 24 subpoenas go hand in hand.").

Given the plain language of Section 24, the legislative history of the PTO, and the case law interpreting the scope of Section 24, the Court concludes that it is not empowered under Section 24 to issue the subpoena that was issued here, namely a subpoena commanding a nonparty to produce documents. While a subpoena commanding a nonparty deposition deponent to produce documents at his or her deposition would "give teeth" to the PTO rules, allowing the instant subpoena *duces tecum* to issue to Border Foods, which is neither a party nor a deposition deponent, would improperly compel discovery broader than or different from that permitted by the PTO in its own proceedings. Accordingly, the subpoena issued to Border Foods will be quashed.

## CONCLUSION

For the foregoing reasons, Mizhan's motion to quash the subpoena issued to Border Foods will be granted. Given the Court's disposition of Mizhan's motion and the fact that the subpoena issued to Border Foods is the only remaining subpoena issued by this Court that was the subject of HCC's motion to quash, HCC's motion is moot.

**IT IS THEREFORE ORDERED** that Emergency Motion of Mizkan Americas, Inc. ("Mizkan"), Successor in Interest to Border Foods, Inc. to Quash, or Alternatively, Emergency Motion for Protective Order [Doc.9] is **GRANTED;** and Registrant/Applicant Hatch Chile

Company, Inc. ("HCC") Emergency Motion to Quash, and/or Alternatively, Emergency Motion for Protective Order, and Motion for Sanctions [Doc. 1] is **DENIED AS MOOT**.

DATED this 18th day of December, 2014.

_____
MARTHA VAZQUEZ
United States District Judge